COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Frank


JANICE KNIGHT

                                    MEMORANDUM OPINION*
v.   Record No. 1841-99-3              PER CURIAM
                                    NOVEMBER 23, 1999
BEDFORD COUNTY DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                 J. Samuel Johnston, Jr., Judge

            (Carolyn H. Furrow, on brief), for appellant.

            (J. G. Overstreet, County Attorney, on
            brief), for appellee.

            (R. Louis Harrison, Jr.; Steven R. Grant, on
            brief), Guardians ad litem for the minor
            children.


     Janice Knight (Knight) appeals the decision of the circuit

court terminating her parental rights to her three children,

Glenna Renee Knight, Lizzie Leann Calloway, and Jerome Peaches

Calloway, Jr., all under the age of six.  On appeal, Knight

contends that (1) the evidence was insufficient to meet the

statutory requirements set out in Code § 16.1-283(C)(2); and (2)

her rights to due process were violated when the trial court

proceeded with the termination hearing despite her absence.  Upon

reviewing the record and briefs of the parties, we conclude that

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

On appeal, under familiar principles, we view the evidence and all reasonable inferences in the light most favorable to the Bedford County Department of Social Services (DSS), the party prevailing below.  <u>See</u> <u>Martin v. Pittsylvania County Dep't of Social Servs.</u>, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).  "Where, as here, the court hears the evidence <u>ore</u> <u>tenus</u>, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  <u>Id.</u>  "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests."  <u>Logan v. Fairfax County Dep't of Human Dev.</u>, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted).

> When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests.  On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."

<u>Id.</u>

<u>Code § 16.1-283(C)(2)</u>

The trial court found that the DSS presented clear and convincing evidence sufficient to meet the requirements of Code

-

§ 16.1-283(C)(2) and that termination of Knight's parental rights was in the best interests of her children. "Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

Under Code § 16.1-283(C)(2), the parental rights of a parent whose child is in foster care may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the child and that:

> The parent . . ., without good cause, [has] been unwilling or unable within a reasonable period not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent . . . without good cause, [has] failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with [her] obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior

-

efforts of such agencies to rehabilitate the parent . . . prior to the placement of the child in foster care.[1]

DSS became involved with Knight in the summer of 1997. At that time, Knight and the three children were living in a home without running water or electricity. The home also had lead in the soil, exposing the children to lead poisoning. At that time, Knight needed assistance with transportation, finances, and supervision of the children. By November 1997, Jerome P. Calloway (Calloway), the biological father of Lizzie and Jerome, Jr., was living in the home, having been released from prison. Knight reported abuse at the hands of Calloway and signed an entrustment agreement placing her children in foster care. Knight reported to DSS an incident in which Calloway held a shotgun to her head and choked her in front of the children.

In December 1997, Knight entered a program at Miriam's House. Program personnel reported that Knight did not make

---

[1] The trial court found clear and convincing evidence satisfied the requirement of Code § 16.1-283(C)(2) and (C)(3)(b). Code § 16.1-283 was substantially revised effective July 1, 1998, prior to the date the petitions for termination were filed in the juvenile and domestic relations district court. Under the revised statute, the provision formerly set out in subsection (C)(3)(b) is incorporated in subsection (C)(2). The revised provision is virtually unchanged from the previous provision, except that parents must make "substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement" rather than only "reasonable progress." None of the parties suggested on appeal that the trial court's reference to Code § 16.1-283(C)(3)(b) under the older version of the statute affected the outcome of this case.

-

substantial progress, noting she failed to abide by the program's rules and repeatedly failed to adequately supervise her children.  The two older children showed signs of abuse, including night terrors and exaggerated startle responses.  The eldest child was not speaking, although she was over three years old.  Program personnel reported that Knight's "interactions with Miriam's House staff have been characterized by dishonesty," noting particularly that Knight failed to disclose her 1990 conviction for aggravated sexual battery of a fourteen-year-old babysitter, which would have barred her admission into the program without further investigation. Knight left the program in January 1998, despite the fact that the children were then placed in foster care and were no longer with her.

Calloway underwent an assessment under ARISE, which indicated he needed an intensive treatment program.  He refused to acknowledge any problem with drinking or drugs, although he tested positive for cocaine.  He also indicated that he did not care if he did not see the children until they were eighteen. DSS told Knight that, in light of Calloway's failure to acknowledge any problem with alcohol, her relationship with Calloway impeded her ability to regain custody of the children. Nonetheless, she elected to stay with Calloway.  They moved into a new residence in June 1998, which did not have running water until October 1998.

-

Through DSS, Knight received intensive home-based counseling and mentoring services designed to assist her as a single parent, but demonstrated no ability to continue on her own when those services were cut back. Knight was encouraged to attend AL-ANON, and to stay in contact with the Child Abuse Prevention Center on a regular basis. Knight did not do so. She worked several jobs, but failed to hold one job for more than a few months. She failed to implement recommended changes in her behavior or to contact available services. Through her decision to remain with Calloway, and the physically inadequate and unhealthy home in which they lived, the children did not have overnight visits so that she could implement parenting skills she was shown.

At trial, Knight admitted that DSS told her that Calloway was a danger to her children. She testified that she planned to remain with Calloway. She testified that, if she had custody of the children, Calloway would leave the premises. However, Calloway testified that he would remain in the home for the next year because he was being released on house arrest.

The trial court found that Knight, without good cause, was unwilling or unable to remedy substantially the conditions which led to the children's foster care placement, for a period exceeding twelve months. The evidence indicated that Knight received extensive services. Significantly, however, she refused to remove herself from the abusive relationship with

-

Calloway. He refused any counseling. Thus, the underlying cause of the children's placement in foster care – the abusive home environment – remained unchanged. Knight remained emotionally entangled in the relationship despite its effect on her ability to have the children returned to her. In light of her past history of returning to Calloway, regardless of the consequences, the trial court was entitled to place little weight on her testimony that he would leave the home if she regained custody. Moreover, Calloway denied that he would leave the home.

The children were entitled to stability in their lives and to an environment free from violence. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities." Kaywood v. Halifax Co. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Because the record supports the finding of the trial court that DSS presented clear and convincing evidence meeting the statutory requirements of Code § 16.1-283(C)(2), we affirm the trial court's decision to terminate Knight's parental rights.

Due Process

At the commencement of the termination proceeding at 2:00 p.m. on June 11, 1999, Knight's counsel notified the court that Knight was not present, allegedly because "her ride would

-

not pick her up until three o'clock."  Knight's counsel acknowledged that Knight knew about the hearing, both by letter dated April 6 and from their meeting on May 17.  Knight's counsel sought a delay, which the trial court denied.  Knight appeared prior to the close of the evidence and was able to testify in her own behalf.

We find no merit in Knight's due process claim. "Procedural due process guarantees a litigant the right to reasonable notice and a meaningful opportunity to be heard." Etheridge v. Medical Center Hospitals, 237 Va. 87, 97, 376 S.E.2d 525, 530 (1989).  Knight had both notice of the hearing and an opportunity to be heard.  Whether she diligently exercised that opportunity was strictly a matter under her own control.  Knight's failure to appear, even if inadvertent, cannot be attributed to the fault of anyone other than herself. Knight's interests were represented, as her counsel was present throughout the hearing.  We cannot say that Knight was denied any due process by the trial court's refusal to delay the start of the termination hearing.

Accordingly, the decision of the circuit court is summarily affirmed.

Affirmed.

-